**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **JAHLEEL ASSAD,** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO.** |
| | **5:20-cv-00135-TES** |
| **AIR LOGISTICS AND ENGINEERING SOLUTIONS, LLC and AIR LOGISTICS AND ENGINEERING CONSULTANTS, LLC,** | |
| *Defendants.* | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Jahleel Assad brings this action against Defendants Air Logistics and Engineering Solutions, LLC ("Defendant Solutions") and Air Logistics and Engineering Consultants, LLC ("Defendant Consultants"), alleging race and religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* ("Title VII") and race discrimination in violation of 42 U.S.C. § 1981 ("§ 1981"). Both Defendants have moved for summary judgment on all claims asserted against them. *See* [Doc. 28]. For the reasons discussed below, the Court **GRANTS** Defendants' Motion for Summary Judgment [Doc. 28].

## BACKGROUND

### A.    Outstanding Discovery Concerns

Before the Court delves into the substance of this action, it must first address

Plaintiff's allegations that there are "outstanding issues in discovery that are preventing

[him] from fully responding to Defendants' assertions of fact." [Doc. 32, p. 4]. Plaintiff

relies on Federal Rule of Civil Procedure 56(d) in asking the Court to deny, or at least

reserve ruling, on Defendants' Motion for Summary Judgment because he "was unable

to complete discovery on the issues on which Defendants seek summary judgment[.]"

[*Id.* at p. 6]. Accordingly, Plaintiff requests another extension of the discovery deadline,

even though his three previous extensions had given him until October 15, 2021, to

complete his discovery. As detailed below, the Court provided Plaintiff nearly a year

and a half to conduct discovery, and he didn't get it done.

In support of his request, Plaintiff's counsel submitted a Rule 56(d) Declaration

[Doc. 32-4], detailing his need for additional discovery. "Under [R]ule 56(d), a court

may 'defer' or 'deny' a motion for summary judgment, allow additional time for

discovery, or issue an appropriate order [if] a nonmovant shows by affidavit or

declaration that, for specified reasons, it cannot present facts essential to justify its

opposition." *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1334 (11th Cir. 2021) (quoting

Fed. R. Civ. P. 56(d)). Deferral or denial is appropriate to prevent premature summary

judgment and to ensure that the parties have had an "adequate opportunity to conduct

discovery." *Est. of Todashev by Shibly v. United States*, 815 F. App'x 446, 450 (11th Cir. 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see Snook v. Trust Co. of Ga. Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988) (stating that "[t]his court has often noted that summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery[]").

However, this is not one of those instances in which a party did not receive an adequate opportunity to conduct discovery. Quite the opposite—the Court extended the discovery period multiple times to provide the parties an opportunity to develop a full and complete record. To ensure a thorough analysis, the Court lays it out in detail below.

On June 10, 2020, the Court entered a Scheduling and Discovery Order [Doc. 11] that set "the initial phase of discovery [to] be limited to and/or focused on the issues of the number of individuals employed by both Defendants at all times in 2018 and 2019 and the degree of interrelation of management, ownership, operations, etc. of Defendants." [Doc. 11, p. 3]. This initial phase of discovery expired on December 7, 2020. [*Id.* at p. 2].

On the day that discovery was set to expire, both parties moved to extend discovery based on challenges presented by the COVID-19 pandemic. [Doc. 12, ¶ 5]. The Court granted their motion and extended discovery to March 7, 2021. [Doc. 13].

3

After the close of this initial phase of discovery, Defendants moved for summary judgment on all claims set forth in Plaintiff's Amended Complaint (hereinafter, the "First Motion for Summary Judgment"). [Doc. 16]. In response, Plaintiff's counsel filed his first Rule 56(d) Declaration [Doc. 21-1], wherein he asked the Court to defer ruling on Defendant's First Motion for Summary Judgment because he was "largely unable to produce evidence specifically rebutting Defendants' purported undisputed facts[]" due to the limited scope of discovery at that time. [Doc. 21-1, ¶ 9]. Plaintiff also moved the Court to "reopen discovery in this case[] and set the scope of discovery to Plaintiff's substantive factual allegations and Defendants' liability and damages." [Doc. 21, ¶ 11]. Upon review, the Court reopened discovery—imposed no limitations on it—and set the new deadline for August 26, 2021. [Doc. 22]. Through this extension, the Court afforded both parties an additional 91 days to conduct discovery on all substantive issues relevant in this action.

In what became a pattern, Plaintiff waited until the last day of the discovery period to move for another 45–day extension to complete discovery, in large part, due to challenges presented by the COVID-19 pandemic. *See* [Doc. 27, ¶ 7 ("[T]he number of cases of the COVID-19 virus have increased substantially, requiring many of the same precautions as earlier in the pandemic, and once again impairing the ability to schedule and hold in-person depositions.")]. As an additional basis, Plaintiff sought an extension because of his involvement with a different civil matter, and he explained that "having

two matters in active litigation, both in discovery, ha[d] caused [him] some difficulty in completing discovery in this case." [*Id.* at ¶ 8].

At the time, the Court noted that it had "little sympathy for [the] thin excuses[]" offered as justification for additional discovery in this action. [Doc. 31, p. 3]. However, upon review of the record, the Court concluded "that it would seriously undercut [Plaintiff's] counsel's ability to effectively respond to Defendants' Motion for Summary Judgment[,]" without additional time. [*Id.* at p. 4]. So, the Court extended discovery an additional 45 days to provide Plaintiff one final opportunity to supplement the record. [*Id.* at p. 5]. The Court expressly informed Plaintiff that it extended discovery for the limited purpose of (1) allowing Plaintiff the opportunity to depose two identified witnesses, and (2) allowing Defendants 30 days to respond to the written discovery that Plaintiff's counsel served in August 2021. [*Id.* at pp. 4–5]. The Court set discovery to expire on October 15, 2021. [*Id.* at p. 5]. As one final note, the Court candidly cautioned Plaintiff's counsel "[to] think long and hard before seeking additional extensions" in this matter, because "[its] patience ha[d] been exhausted with [his] lack of diligence." [*Id.*].

Forty-five days passed and discovery expired without word from either party regarding any lingering discovery-related issues that needed to be addressed. Then, on November 5, 2021, Plaintiff filed his Response [Doc. 32] to Defendants' Second Motion for Summary Judgment, announcing to the Court for the first time that "outstanding

issues in discovery . . . prevent[ed] [him] from fully responding to Defendants'
[Statement of Material Facts]." [Doc. 32, p. 4]. In addition, Plaintiff filed his second Rule
56(d) Declaration asking for more discovery. *See* [Doc. 32-4].

Any notion that the Court did not give Plaintiff an adequate opportunity to
conduct discovery is simply a nonstarter. The Court gives such incredible argument
absolutely no quarter. The background detailed above clearly shows that the parties
received more than ample time and multiple opportunities to develop the record—
nearly 17 months. And in all that time, Plaintiff failed to take a single deposition.

"Rule 56[(d)] is designed to minister[] to the vigilant, not to those who slumber
upon perceptible rights." *Robinson v. Wells Fargo Bank, N.A.*, 1:10-CV-3819-TCB-GGB,
2012 WL 13130022, at *9 (N.D. Ga. June 7, 2012) (quoting *Mass. Sch. of Law at Andover,
Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 45 (1st Cir. 1998)). Plaintiff doesn't offer a single
argument in his second Rule 56(d) Declaration that convinces the Court that the
information he claims is essential to his opposition to the summary judgment motion
could not have been obtained in those 17 months. The Court easily concludes that it
gave Plaintiff more than an adequate opportunity to conduct discovery, but Plaintiff
failed to diligently pursue his options. Thus, the Court rests on solid ground to deny
what would be Plaintiff's fourth request for additional discovery. *See Williams v. Ala.
Dep't of Indus. Rels.*, 684 F. App'x 888, 896 (11th Cir. 2017) (discussing how the Eleventh
Circuit "has affirmed denials of [rule 56(d)] motions where the movant had ample time

and opportunity for discovery, yet failed to diligently pursue his options[]"). Now to the particulars.

Plaintiff argues that he couldn't depose Mike Bolton because Defendants failed to provide him Bolton's address so he could serve him with a deposition subpoena. [Doc. 32-4, ¶ 14].[1] He also complains that he couldn't depose Rich Hardwick because Defendants never provided his availability for a deposition. [*Id.*].

The Court very clearly gave Plaintiff until October 15, 2021, to depose these witnesses. *See* [Doc. 31, p. 5 ("The Court . . . extends discovery to allow Plaintiff to depose those two witnesses, and no one else, noting that the depositions must be taken on or before October 15, 2021.")]. Obviously, October 15th passed without either witness being deposed. With such a hard deadline, the reasonably prudent thing for Plaintiff to have done was simply notice the witnesses for a deposition and let their respective counsel react to the subpoena. But, Plaintiff didn't act as a reasonably prudent person would.

Furthermore, regarding Bolton, it appears that Plaintiff has known Bolton's address and contact information for awhile now. On June 24, 2020, Plaintiff signed his

---

[1] The parties set the initial phase of discovery to focus "on the number of individuals employed by both Defendants at all times in 2018 and 2019 and the degree of interrelation of management, ownership, operations, etc. of Defendants." [Doc. 11]. Bolton was one such individual, and the parties identified him as a witness expected to be deposed in their proposed Scheduling and Discovery Order. [*Id.* at pp. 3–4]. Therefore, the initial phase of discovery seems to cover Bolton's employment with Defendant Solutions, and the Court cannot understand what prevented Plaintiff from deposing him during that phase of the discovery. Plaintiff had Bolton's address—it was provided right next to Bolton's name in the Scheduling and Discovery Order that both parties signed on June 10, 2020. [*Id.* at p. 4].

Rule 26 Initial Disclosure [Doc. 36-1], wherein he included the contact information for numerous individuals likely to have discoverable information—including Bolton. *See* [Doc. 36-1, p. 2]. Yes, that's correct–Plaintiff identified the contact information for the very witness that he now complains that Defendants wouldn't tell him about. Nothing in the record indicates that Plaintiff's information was incorrect, which arguably *might* have prevented him from relying on it to timely contact Bolton. It also appears that Defendant provided Plaintiff with Bolton's address as a response to an interrogatory on September 28, 2021. [Doc. 32-10, p. 22]. While Plaintiff tries to blame Defendants for his failure to timely depose Bolton, the Court easily finds that it is simply his own fault he didn't do so; he can only blame himself.

The Court finds Plaintiff's reason for not deposing Rich Hardwick equally unimpressive. His excuse: Defendants did not provide Hardwick's availability for a deposition. [Doc. 32-4, ¶ 14]. In response, Defendants explain that "Plaintiff made no effort to schedule a deposition of [] Hardwick[]" after the Court instructed Plaintiff to do so. [Doc. 35, p. 6]. Plaintiff effectively blames Defendants for not doing something that he never asked them to do.

Plaintiff had from May 26, 2021, until October 15, 2021, to depose any witnesses he believed held material, relevant knowledge about the substantive, factual allegations underlying this action. *See* [Doc. 21]; [Doc. 22]. And yet, he just didn't do it. Throughout this extended discovery period, Plaintiff never notified the Court that he believed

Defendants failed to meet their discovery obligations; nor did he file a motion to compel the necessary information. *See Pruitt v. Charter Commc'ns, Inc.*, 5:17-cv-1764-LCB, 2020 WL 8093584, at *6 (N.D. Ala. Dec. 18, 2020) (noting that the plaintiff's time to "raise any concerns about [the defendant's] purported discovery failures ha[d] passed" after discovery had closed, and the plaintiff failed to notify the court about the purported failures beforehand). Perhaps most critically, Plaintiff never points to a single interrogatory, request for production of documents, or even a request to admit that he sent Defendants from October 13, 2020, to August 26, 2021. From the record, it looks to the Court that he just didn't do a thing to support his case.

Finally, the Court briefly addresses Plaintiff's contention that he never received requested documents from Defendants. *See* [Doc. 32]; [Doc. 32-4, ¶ 13]. On September 28, 2021, Defendants served their responses to Plaintiff's written discovery requests via electronic mail. [Doc. 32-4, ¶ 8]; [Doc. 35, p. 1]. However, Plaintiff contends that Defendants did not attach any of the documents identified for production. [Doc. 32-4, ¶ 8]. Rather than immediately contact Defendants about this apparent error, Plaintiff waited **38 days** to inform Defendants about the missing attachments. [*Id.* at ¶¶ 12–13]. The Court finds it highly unusual that Plaintiff waited so long to address this missing evidence—evidence that Plaintiff now claims is necessary for "[him] to be able to rebut Defendants' Statement of Undisputed Facts in support of their Motion for Summary Judgment." [*Id.* at ¶ 15]. Reasonable diligence should have prompted Plaintiff's counsel

to investigate this matter and at least address it with opposing counsel prior to the close of discovery on October 15, 2021, if not on that very day. To make the Court's point even clearer, Plaintiff admits that as soon as he emailed opposing counsel about the missing documents, they corrected the error and sent them that very day. *See* [*id.* at ¶ 12]. Plaintiff just waited until the day he was supposed to submit his response to Defendants' Motion for Summary Judgment to send such an email.

Once again, Plaintiff did not exercise reasonable diligence here. The Court will not extend discovery yet again solely because Plaintiff can't (or won't) diligently pursue discovery in this matter. *See Williams*, 684 F. App'x at 896; *Barfield v. Brierton*, 883 F.2d 923, 932 (11th Cir. 1989) (affirming denial of motion to stay consideration of a motion for summary judgment where "the record indicate[d] that the plaintiff had ample time and opportunity for discovery, yet failed to diligently pursue his options[]").

Having fully considered Plaintiff's second Rule 56(d) Declaration, the Court exercises its considerable discretion to conclude that additional time for discovery is not warranted. The record is what the record is and that is what the Court relies on for its presentation of the facts.

## B.     Factual Background

### 1.     Defendants' Statement of Undisputed Material Facts

The next issue that the Court must address before delving into the substance of this action is largely related to Plaintiff's second Rule 56(d) Declaration. As discussed in

detail above, Plaintiff filed a Rule 56(d) Declaration to support his contention that he could not adequately address Defendants' Statement of Material Facts. *See* [Doc. 32-4]; [Doc. 32-2]. In response to many of Defendants' factual allegations, Plaintiff simply replies: "Plaintiff is without sufficient knowledge to admit or deny this fact, which is being supported by a declaration filed concurrently herewith pursuant to Fed. R. Civ. P. 56(d)." [Doc. 32-2, ¶¶ 3, 5, 7–8, 16–18, 19–21].

Middle District of Georgia Local Rule 56 clearly states that "[t]he respondent to a motion for summary judgment may not assert insufficient knowledge to admit or deny a material fact asserted by the movant unless the respondent has complied with the provisions of Rule 56(d) of the Federal Rules of Civil Procedure." LR 7.6, MDGa. In turn, Rule 56(d) states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). The Eleventh Circuit elaborated on the requirements for the declaration, stating that it must "set[] forth with particularity the facts the moving party expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment." *Garner v. City of Ozark*, 587 F. App'x 515, 518 (11th Cir. 2014) (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998)); *see EPI-USE Sys. Ltd. v. BI Brainz, LLC*, 1:20-CV-2356-TWT, 2022 WL 220192, at *2 (N.D. Ga. Jan. 25, 2022)

("The Eleventh Circuit has liberally applied Rule 56(d) in favor of nonmovants when they *identify information not yet obtained* and *how that information could support a defense*.") (emphasis added).

Plaintiff's second Rule 56(d) Declaration lacks any discussion related to the particular information he expects to learn through additional discovery that would create a genuine issue of material fact in this action. *See* [Doc. 32-4]. Plaintiff just blanketly asserts that additional discovery is necessary. *See* [*id.* at ¶ 15 "([T]he discovery discussed herein was needed for Plaintiff to be able to rebut Defendants' Statement of Undisputed Facts in support of their Motion for Summary Judgment.")]. While Plaintiff says that he would like to present testimony from two witnesses, he does not explain what particular facts these witnesses might testify about that could help him fend against Defendants' Motion for Summary Judgment. Plaintiff must do more than "'rely on vague assertions that additional discovery will produce needed, but unspecified facts,' rather [he] must specifically demonstrate how delaying a ruling on the motion will enable [him] to rebut the [Defendants'] showing that there is no genuine issue of material fact." *Williams-Evans v. Advance Auto Parts*, CV-118-148, 2019 WL 2426443, at *2 (S.D. Ga. June 7, 2019) (citing *Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843–44 (11th Cir. 1989)). He has failed to demonstrate any such thing, and accordingly, this failure affects how the Court must consider the facts in this action.

Pursuant to Local Rule 56, "[a]ll material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." LR 56, MDGa. In Response to Defendants' Statement of Material Facts, Plaintiff largely either cites "insufficient knowledge to admit or deny [a statement]" or disputes a statement without specifically *controverting*[2] it by citation to the record. *See*

_____

[2] Plaintiff often disputes a statement and provides citation to the record that has little to no bearing on the statement. For example, Defendants' Statement of Material Fact No. 14 states:

> Mr. Hudson and Mr. Hardwick conducted the interview of Plaintiff on March 5, 2019. At no time did Mr. Hardwick or Mr. Hudson ask Plaintiff to disclose his race or religion, and Plaintiff in fact did not state his race or religion. At the conclusion of the interview, Mr. Hardwick and Mr. Hudson told Plaintiff they would be in touch if they had any further questions. Mr. Hardwick did not promise to be back in contact with a firm offer or rejection call and/or letter. He did inform Plaintiff that they were awaiting new funding on the Phase II SBIR contract before [they] could hire anyone.

[Doc. 28-2, ¶ 14]. Plaintiff disputes this statement and cites to seven paragraphs in his Declaration that supposedly controvert it. *See* [Doc. 32-2 ¶ 14 (citing Doc. 32-3, ¶¶ 10–16)]. However, Plaintiff's citation does no such thing. To be thorough, the Court presents the contents of the cited paragraphs below:

> Paragraph 10 states: "On March 5, 2019, [Plaintiff] had a telephone interview with Mr. Hardwick."
> Paragraph 11 states: "[Plaintiff was] not sure who else was in the room with Mr. Hardwick during the interview, but [he] did overhear another male voice inside the room."
> Paragraph 12 states: "During the interview with Mr. Hardwick, he told [Plaintiff] that [he] was 'more than qualified for the position.'"
> Paragraph 13 states: "Mr. Hardwick acknowledge that [he] had recent experience doing similar work from [his] prior position, for which [he] held for three years, and that [he] had acquired the education and degree required for the position (i.e., master's degree)."
> Paragraph 14 states: "Based on comments made by Mr. Hardwick, [Plaintiff] believed that the interview went over well."
> Paragraph 15 states: "Mr. Hardwick told [Plaintiff] that issues with [his] Common Access Card (CAC) would not be an impediment to being hired."
> Paragraph 16 states: "Defendants told [him] that they would follow up with a decision. However, [he] was never contacted."

*generally* [Doc. 32-2]. When Plaintiff responds in such an impermissible manner, the

Court must deem those statements as admitted.

This does not mean that the Court is relieved of its responsibility to "review the

movant's citations to the record to determine if there is, indeed, no genuine issue of

material fact." *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008). Upon reviewing the

record and viewing it in the light most favorable to Plaintiff, the Court finds the facts to

be as follows.

2.   The Facts

In early 2019, Defendant Solutions posted online a job opening at its company for

the position of a Small Business Innovative Research ("SBIR") Phase II Lead Engineer.

[Doc. 32-2, ¶ 4]. The job posting stated that applicants should have the following

qualifications, education, and or experience: either a Bachelor of Science, Master of

Science, or a Doctorate in science or engineering and five years or more of experience.

[*Id.*].

On or about, February 13, 2019, Charles Ford, a white male, applied for the

position of Phase II Lead Engineer. [*Id.* at ¶¶ 7–8]. In his application, Ford purported to

---

[Doc. 32-2, ¶¶ 10–16]. Nowhere in these paragraphs does Plaintiff controvert the fact that Bolton
was not a part of the March 5th interview. Nowhere does he controvert the fact that he was never
asked to disclose his race or religion by the interviewers. And nowhere does he controvert the
fact that Hardwick informed Plaintiff that they could not hire anyone until they received news
about the funding allotted for the Phase II SBIR contract. The only fact that Plaintiff controverts is
the one involving post-interview follow-up discussions, which the Court has been mindful of
when drafting its presentation of the facts.

have a bachelor's degree in mechanical engineering. [*Id.* at ¶ 8]. On or about February 21, 2019, Plaintiff, a black male who subscribes to the faith of Islam, also submitted an application for the SBIR Phase II Lead Engineer position. [*Id.* at ¶ 6]. By way of background, Plaintiff holds a master's degree in electrical engineering. [*Id.* at ¶ 8]. Seven days after Plaintiff submitted his application, Defendant Solution's sole owner, Rich Hardwick, contacted Plaintiff via email to schedule a telephone interview for March 5, 2019, at 3:30 p.m. [*Id.* at ¶ 9]. At the time, Hardwick expected two Defendant Solutions employees, Mike Bolton and Scot Hudson, to participate in the scheduled interview. [*Id.*]. Accordingly, Hardwick copied both employees on the email sent to Plaintiff. [*Id.*]. Within the hour, Bolton sent a reply-all email that stated, "Honestly, I don't trust him by the name. I hired an African American once before and he let me down badly." [*Id.*].

Hardwick realized that Bolton's email went to Plaintiff, and he immediately forwarded the email chain to April Lankford—a human resources representative for Defendant Solutions—adding the following remarks, "Amazingly bad --- I'm calling Jahleel now." [*Id.* at ¶ 10]. Hardwick then called Plaintiff and left a voicemail for him. [*Id.* at ¶ 11]. Following this action, he then emailed Plaintiff, saying in part, "[p]er my recent voicemail, I have no idea why [Bolton] would send such an email. It was inappropriate and does not in any way represent myself or our company. [Hudson] and I look forward to chatting with you on Tuesday." [*Id.* at ¶ 9].

15

Soon thereafter, Plaintiff returned Hardwick's call, but it became apparent during their conversation that Plaintiff had not yet listened to the voicemail. [*Id.* at ¶ 12]. After explaining the situation, Hardwick apologized for Bolton's comment and informed Plaintiff that Bolton would be reprimanded and would not be participating in his telephone interview scheduled for March 5, 2019.[3] [*Id.* at ¶ 13].

The interview occurred as scheduled, with Hardwick and Hudson conducting the interview. [*Id.* at ¶ 14]. Hardwick told Plaintiff that he was "more than qualified for the position[,]" and acknowledged his "recent experience doing similar work from [a] prior position." [Doc. 32-3, Assad Decl., ¶¶ 12–13]. At no point during the telephone interview did either Hardwick or Hudson ask Plaintiff to disclose his race or religious views, nor did Plaintiff voluntarily provide this information. [Doc. 32-2, ¶ 14]. At the close of the interview, Hardwick informed Plaintiff that they were awaiting news about the funding on the SBIR contract before making any hiring decisions. [*Id.*].

On March 12, 2019, Hardwick blind-copied Plaintiff on an email regarding an update on the interview process, that stated:

> All—We wanted to provide a quick update to everyone we spoke with last week. Currently, we are still evaluating candidates and awaiting [Air Force] modification to our RTA contract. While we're told the [Air Force] anticipates having the additional funding obligated within the next 4–6 weeks, it could take more or less than that [Air Force] estimate. Over the next several weeks, we will complete our initial phone interviews, and then

---

[3] While Plaintiff disputes this fact, his specific citation to the record does not specifically controvert it. *See* [Doc. 32-2 (citing Doc. 32-3, ¶¶ 8–11)].

> reach out individually to those we desire to schedule for in person
> interviews. Thanks for your patience and interest, Rich.

[*Id.* at ¶ 16]. At the time of Plaintiff's interview, Defendant Solutions was still considering which Air Force requirements would need to be implemented given the new funding. [*Id.* at ¶ 17]. Defendant Solutions also became privy to two changes that impacted the company's hiring needs. [*Id.* at ¶ 18]. One of its clients, the United States Air Force, decided not to replace the existing Spectrum Cross Point Matrix with a new Cross Point Matrix. [*Id.*]. This affected Defendant Solution's hiring needs because had the Cross Point Matrix design been implemented, the company would have needed to hire an additional electrical engineer. [*Id.*]. However, since the Air Force did not implement the Cross Point Matrix design, Defendant Solutions no longer needed to hire an electrical engineer. [*Id.*]. Similarly, the Air Force desired "a three-tiered Interface Connect Assembly (ICA) verses the existing two-tiered ICA on the existing VDATS stations." [*Id.*]. As a result of these two changes by the Air Force, Hardwick concluded that an applicant with a mechanical engineering degree, rather than an electrical engineering degree, would best be suited for the position. [*Id.*].

On May 13, 2019, Defendant Solutions hired Ford as a mechanical engineer on the project. [*Id.* at ¶ 19]. Additionally, Defendant Solutions hired Ezebuugo Nwaonumah on March 30, 2020, to serve as a second mechanical engineer on the project. [*Id.*]. Hardwick did not inform Plaintiff that he was not offered the SBIR Phase

II Lead Engineer position. [Doc. 32-3, ¶ 16]. Soon after learning of Natonabah's

employment with the company, Plaintiff sued Defendants.

## LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on

the evidence presented, "'a reasonable jury could return a verdict for the nonmoving

party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002)

(quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991));

*see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears

the initial responsibility of informing the court of the basis for its motion." *Four Parcels*,

941 F.2d at 1437. The movant may cite to particular parts of materials in the record,

including, "'the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any,' which it believes demonstrate the absence of a

genuine issue of material fact." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986)); Fed. R. Civ. P. 56(c)(1)(A).[4] "When the nonmoving party has the burden of proof

at trial, the moving party is not required to 'support its motion with affidavits or other

similar material negating the opponent's claim[]' in order to discharge this 'initial

---

[4] Courts may consider all materials in the record, not just those cited by the parties. Fed. R. Civ. P.
56(c)(3).

responsibility.'" *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 323).

Rather, "the moving party simply may show—that is, point out to the district court—

that there is an absence of evidence to support the nonmoving party's case." *Four*

*Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 324) (cleaned up). Alternatively,

the movant may provide "affirmative evidence demonstrating that the nonmoving

party will be unable to prove its case at trial." *Id.*

   If this initial burden is satisfied, the burden then shifts to the nonmoving party,

who must rebut the movant's showing "by producing . . . relevant and admissible

evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d

1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The nonmoving party does

not satisfy its burden "if the rebuttal evidence 'is merely colorable or[] is not

significantly probative' of a disputed fact." *Josendis*, 662 F.3d at 1315 (quoting *Anderson*,

477 U.S. at 249–50). "A mere scintilla of evidence supporting the [nonmoving] party's

position will not suffice." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

Further, where a party fails to address another party's assertion of fact as required by

Federal Rule of Civil Procedure 56(c), the Court may consider the fact undisputed for

purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "credibility determinations,

the weighing of the evidence, and the drawing of legitimate inferences from the facts

are jury functions, not those of a judge. *Anderson*, 477 U.S. at 255. Succinctly put,

> [s]ummary judgment is not a time for fact-finding; that task is reserved for
> trial. Rather, on summary judgment, the district court must accept as fact

all allegations the [nonmoving] party makes, provided they are sufficiently supported by evidence of record. So[,] when competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible. Indeed, if "the only issue is one of credibility," the issue is factual, and a court cannot grant summary judgment.

*Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) (internal citations omitted). Stated differently, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "The evidence of the [nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. And "if a reasonable jury could make more than one inference from the facts, and one of those permissible inferences creates a genuine issue of material fact, a court cannot grant summary judgment"; it "must hold a trial to get to the bottom of the matter." *Sconiers*, 946 F.3d at 1263.

## DISCUSSION

Plaintiff claims that Defendants did not hire him for the position of SBIR Phase II Lead Engineer because he is black and subscribes to the Islamic faith. He asserts race discrimination claims under Title VII and § 1981, and asserts a religious discrimination claim under Title VII. Defendants move for summary judgment on all claims, arguing that Plaintiff fails to establish a *prima facie* case of race or religious discrimination and second, fails to show that their legitimate, nondiscriminatory reasons for not hiring him were pretext for discrimination.

**A.       Plaintiff's Race Discrimination Claims**

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a). Both statutes make it unlawful for an employer to not hire an applicant on the basis of his race. The Court will examine Plaintiff's Title VII and § 1981 claims "in tandem because they have the same requirements of proof and use the same analytical framework." *Bailey v. DAS N. Am., Inc.*, 473 F.Supp.3d 1310, 1325 (N.D. Ala. 2020) (citing *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1256–57 (11th Cir. 2012)). It makes no distinction in its analysis between those race discrimination claims arising under Title VII and those arising under § 1981.

To establish an employment discrimination claim, a plaintiff must allege that an employer intentionally discriminated against him based on a protected characteristic. *Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995). A plaintiff can show intentional discrimination through direct evidence or circumstantial evidence. *Shannon v. Nat'l R.R. Passenger Corp.*, 774 F. App'x 529, 540 (11th Cir. 2019) (citing *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010)).

Here, Plaintiff states that "[t]his is one of the rare cases where, arguably, some direct evidence of discrimination exists." [Doc. 32, p. 7]. The Court starts there.

    1.    <u>Direct Evidence</u>

Plaintiff argues that Bolton's email, wherein Bolton stated that he didn't trust Plaintiff by name because "[he had] hired an African American once before and . . . [been] let . . . down badly[,]" constitutes direct evidence of race discrimination. "[D]irect evidence of discrimination [is] evidence which reflects 'a discriminatory or retaliatory attitude correlating to the discrimination . . . complained of by the employee.'" *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (quoting *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1990)). "[It] is evidence, which, if believed, proves the existence of a fact in issue without inference or presumption." *Ferrell v. Masland Carpets, Inc.*, 97 F.Supp.2d 1114, 1122 (S.D. Ala. 2000). "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Jones v. City of College Park*, 540 F.Supp.2d 1300, 1305 (N.D. Ga. 2007) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004)). "If the plaintiff presents direct evidence of discrimination, the defendant is then required to prove by a preponderance of the evidence that it would have taken the adverse employment action even in the absence of discrimination." *Cooper v. Southern Co.*, 260 F.Supp.2d 1334, 1341 (N.D. Ga. 2003).

The Court cannot agree with Plaintiff that Bolton's email constitutes direct evidence of race discrimination. It was dumb and inappropriate for sure— in Hardwick's own words: it was "amazingly bad." [Doc. 28-2, ¶ 10]. But, Bolton, the individual who made the repulsive comment—played no role in the hiring process. And this is an essential part of the record that Plaintiff seems to overlook.

The Eleventh Circuit has stated that "remarks that are not tied to a challenged employment decision or are made by non-decisionmakers do not qualify under [its] definition of direct evidence of discrimination." *Robertson v. Riverstone Cmtys., LLC*, 849 F. App'x 795, 801 (11th Cir. 2021) (per curiam); *see Jones*, 540 F.Supp.2d at 1306 (concluding that "where an employer's statement involving race . . . is made by someone other than the decision-maker, the Eleventh Circuit has typically held that the statement does not constitute direct evidence[]"); *Zottola v. Anesthesia Consultants of Savannah, P.C.*, 169 F.Supp.3d 1348, 1362 (S.D. Ga. 2013) (stating that " . . . the biased statement *by a decision-maker* must be made concurrently with the adverse employment event[]" to constitute direct evidence of discrimination) (emphasis added); *Goddard v. City of Atlanta*, 1:05-CV-2286, 2007 WL 9700876, at *12 (N.D. Ga. Aug. 12, 2007) (concluding that the alleged discretionary comment was not direct evidence of discrimination because the employee who made the comment was not "the decisionmaker regarding [the] [p]laintiff's termination[]").

Once Bolton sent the email at issue, Hardwick acted immediately to try and

remedy the situation. He forwarded the email to the company's human resources

department and contacted Plaintiff via email and phone to discuss the situation with

him. During their phone call, Hardwick apologized for Bolton's comments and assured

him that such comments had no place in his company. He also informed Plaintiff that

Bolton would be reprimanded, would not sit in on his March 5th interview and would

have no role in deciding his employment status with the Defendant Solutions. The

record contains plenty of evidence that Hardwick completely removed Bolton from the

hiring process. And Plaintiff has failed to point to any evidence to the contrary, namely

that Bolton was involved at any time after his email.[5]  Furthermore, Plaintiff does not

controvert the fact that Hardwick has the sole authority to hire potential employees for

Defendant Solutions and Defendant Consultants. *See* [Doc. 32-2, ¶ 3]. The Court can

only conclude that Bolton did not participate in any way with the decision-making

process as to whether to hire Plaintiff. As a result, the Court finds that Bolton's email is

not direct evidence of race discrimination. *See Dilla v. West*, 4 F.Supp.2d 1130, 1137

(M.D. Ala. 1998), *aff'd*, 179 F.3d 1348 (11th Cir. 1999) ("[T]he plaintiffs cannot rely on

remarks as direct evidence of discrimination unless they were uttered by the decision-

maker in the challenged action himself, or, at the very least, by a person somehow

---

[5] Plaintiff states that "Hiram 'Mike' Bolton was involved in the decision-making process as to whether to hire Mr. Assad." [Doc. 32-1, ¶ 5]. But in support of this statement, Plaintiff cites to his Amended Complaint [Doc. 1]—which is not evidence. [*Id.* (citing Doc. 25, ¶¶ 23–24)]. And Plaintiff cites to his own Declaration, which has no mention of Bolton being involved in his interview or the hiring process. [*Id.* (citing Doc. 32-3, ¶ 8)].

involved in, or having an influence on, the decisional process."); *see Bernuy v. Chipotle Mexican Grille, Inc.*, No. 8:14-cv-1430-T-24TBM, 2015 WL 4527706, at *3 (M.D. Fla. July 27, 2015) (concluding that a statement must be made by a decisionmaker to constitute direct evidence in an adverse employment decision).

### 2.   Circumstantial Evidence

Since Plaintiff has failed to show direct evidence of race discrimination, the Court will now consider whether he has shown circumstantial evidence of discrimination. "[C]ircumstantial evidence only suggests, but does not prove, a discriminatory motive, and may be evaluated under the burden-shifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 921–22 (11th Cir. 2018) (citation omitted).[6] "Under the *McDonnell Douglas* framework, the plaintiff must first create an inference of discrimination through

---

[6] The Eleventh Circuit has stated that "establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Instead, a plaintiff can survive summary judgment by presenting "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.* "A triable issue of fact exists if the record, viewed in a light more favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Jenkins v. Nell*, ---F.4th ----, 2022 WL 621147, at *5 (11th Cir. Mar. 3, 2022) (quoting *Smith*, 644 G.3d at 1328). A plaintiff establishes a convincing mosaic by showing evidence regarding, among other things, "(1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) systemically better treatment of similarly situated employees, and (3) pretext." *Jenkins*, ---F.4th at *5 (citation omitted). Here, neither party argues about a convincing mosaic of discrimination. However, even if they had, the Court concludes that the record is deplete of any evidence to meet the convincing mosaic standard at the summary judgment stage.

his prima facie case." *Vessells v. Atlanta Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005) (citing

*McDonnell Douglas Corp.*, 411 U.S. at 802).

Here, Plaintiff alleges that Defendants discriminated against him by failing to

hire him for the SBIR Phase II Lead Engineer position because he was black. To prove a

prima facie case of race discrimination in the failure-to-hire context, a plaintiff must

show that: (1) he is a member of a protected class; (2) who applied and was qualified for

the available position; (3) despite his qualifications, he was not hired; and (4) either the

position was filled by a person outside the protected class, or the position remained

open. *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002). Once the

plaintiff establishes his prima facie case, then the burden shifts to the employer to

articulate a legitimate, non-discriminatory reason for its decision not to hire the

plaintiff. *See Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). "The

[employer's] burden is 'exceedingly light' and is 'one of production, not proof.'" *Cooper*,

260 F.Supp.2d at 1341 (quoting *McDonnel Douglas*, 411 U.S. at 802). Should the employer

meet his burden, then "the inference of discrimination drops out of the case entirely,

and the plaintiff has the opportunity to show by a preponderance of the evidence that

the proffered reasons were pretextual." *Vessels*, 408 F.3d at 768 (citing *St. Mary's Honor*

*Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

"Pretext means that the reasons given by the employer were not the real reasons

for the adverse employment decision." *Walls v. Lowe's Home Ctrs., LLC*, 789 F. App'x

852, 855 (11th Cir. 2019) (citing *Hulbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006)). "[T]o establish pretext at the summary judgment stage, a plaintiff must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020) (quoting *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005)). A reason is not pretext for discrimination "unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr.*, 509 U.S. at 515. "The plaintiff must make this showing by introducing significantly probative evidence." *Walls*, 789 F. App'x at 855 (citing *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006)).

Here, neither party attempts to bother addressing the prima facie case. The focus of their disagreement centers on Defendants' legitimate, nondiscriminatory reason for not hiring Plaintiff. Defendants maintain that Plaintiff was not hired because there were changes to the SBIR contract that resulted in the company needing the "skills of one or more [m]echanical [e]ngineers, as opposed to the [e]lectrical [e]ngineer [that] was originally planned." [Doc. 28-1, p. 14]. Plaintiff has a background in electrical engineering, not mechanical engineering. Defendants offered evidence that its client, the Air Force, decided not to implement a new design system that would have necessitated the skills of an additional electrical engineer. This decision, along with the

change to one of Defendants' interface systems, resulted in Hardwick making the

decision to hire two mechanical engineers instead of an electrical engineer.

Plaintiff argues that "the evidence does not support Defendants' claim that there

was any change in the need of the type of engineer they should have hired." [Doc. 32,

pp. 10–11]. He argues that "[i]f Defendants had evidence showing the terms of the

contract changed during this time, then they certainly would have presented that

evidence to demonstrate that they had no choice but to choose a mechanical engineer

over an electrical engineer." [*Id.* at p. 11].

This argument is not persuasive. As the Court noted earlier, Defendant need only

*produce* a legitimate, nondiscriminatory reason for its decision to not hire Plaintiff, it

need not *prove* that reason to be true. *See Cooper*, 260 F.Supp.2d at 1341 (quoting

*McDonnel Douglas*, 411 U.S. at 802). Therefore, in response to Defendants' legitimate,

nondiscriminatory reason, Plaintiff needs to put up significantly probative evidence

that their reason is false. He puts up no evidence. Rather, Plaintiff's response is pure

speculation and wholly unsupported by any citation to the record. *See generally* [Doc. 32,

pp. 10–12]. While Plaintiff certainly questions Defendants' reason to hire a mechanical

engineer who (he unfoundedly asserts) "did not have *any* of the relevant experience

provided in Defendants' own job description[,]" he cannot succeed in his case "by

simply quarreling with the wisdom of [Defendants'] reason." *Chapman v. Al Transp.*, 229

F.3d 1012, 1030 (11th Cir. 2000) (en banc). "The [C]ourt is not in the business of judging

whether employment decisions are prudent or fair[.]" *Walls*, 789 F. App'x at 855 (citing *Rojas v. Fla.*, 285 F.3d 1339, 1342 (11th Cir. 2002)). "Indeed, an employer may . . . refuse to hire an employee for 'a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Brunson v. Dekalb Cnty. Schs.*, 1:19-cv-03189-WMR-RDC, 2021 WL 6690350, at *5 (N.D. Ga. Nov. 22, 2021) (quoting *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015)).

The Court concludes that Plaintiff does not support his pretext arguments with anything more than pure speculative allegations. He has failed to cite to any evidence that shows Defendants' proffered reasons are false and pretext for unlawful discrimination. This is insufficient to avoid summary judgment as to his race discrimination claims under Title VII and § 1981.

## B.    Religious Discrimination Claim

Plaintiff also claims that Defendants failed to hire him because he subscribes to the religious faith of Islam, and he purports to show this discrimination through direct evidence—Bolton's email. First and foremost, this argument fails for the same reasons that it failed as it relates to Plaintiff's race discrimination claims. Bolton is not a decisionmaker as to whether to hire Plaintiff.

However, if that reason were not enough, the Court looks to Plaintiff's own language to find that even he does not believe the email constitutes direct evidence of religious discrimination. Because Bolton's email does not directly make any statement

about the Islamic faith, Plaintiff makes the argument that "[w]hile Defendants attempt to suggest that *no one* knew about [his] religious beliefs, any reasonable juror could assume that with a name largely derived from Arabic, [] Bolton intended to reference either [Plaintiff's] religious or ethnic background." [Doc. 32, p. 7].

The problem with this argument is that by Plaintiff's statement that jurors could make the *inference* that Bolton was referring to his ethnicity, he has presented (at best) circumstantial evidence, and not direct evidence of religious discrimination. Once again, direct evidence "proves the existence of a fact without inference or presumption." *Ferrell*, 97 F.Supp.2d at 1123. "In contrast, circumstantial evidence only 'suggests, but does not prove, a discriminatory motive[.]'" *Jefferson*, 891 F.3d at 921. Bolton's email is clearly not direct evidence of religious discrimination. Plaintiff engages in nothing but pure conjecture, which is woefully inadequate to stave off summary judgment.

Even bending over backwards to give Plaintiff the benefit of every conceivable doubt so as to consider Bolton's email circumstantial evidence, the Court concludes that Plaintiff still fails to set forth a *prima facie* case of religious discrimination. It goes without saying that Plaintiff's race-based Title VII and religious-based claims originate from Defendants' failure to hire him, and since the underlying facts for both claims are the same, "[t]he same analysis—and in particular, the *McDonnell Douglas* burden-shifting framework" will apply to both. *Lewis v. City of Union City*, 918 F.3d 1213, 1220

n.5 (11th Cir. 2019) (citing *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998)). Therefore, Plaintiff needs to meet the four-pronged *McDonnell Douglas* test set forth above for his religious discrimination claim. "More specifically, where intentional religious discrimination under Title VII is alleged, a prima facie case is established if the plaintiff demonstrates the challenged employment decision was made by someone who was aware of the plaintiff's religion." *Lubetsky v. Applied Card Sys., Inc.*, 296 F.3d 1301, 1305 (11th Cir. 2002). "Accordingly, an employer cannot intentionally discriminate against an individual based on his religion unless the employer knows the individual's religion." *Id.* at 1306.

Plaintiff puts up no evidence (only mere speculation) that Defendants knew he subscribed to the religious faith of Islam. Plaintiff merely assumes that they must have known he was Muslim because his last name is Assad. *See* [Doc. 32, p. 7]. This argument simply fails to sufficiently show that Defendants' decisionmakers actually knew Plaintiff was Muslim, especially given Hardwick's undisputed, clear testimony that he did not know Plaintiff's religious beliefs. The Court concludes that no reasonable factfinder could find that Defendants knew Plaintiff subscribed to Islam, which means they certainly could not conclude that Defendants failed to hire Plaintiff because of it.[7]

---

[7] Additionally, a prima facie case of religious discrimination requires a showing that after plaintiff was rejected from the position, his employer continued to seek applicants with the plaintiff's qualifications outside of his protected class. *Lubetsky v. Applied Card Sys., Inc.*, 296 F.3d 1301, 1305 (11th Cir. 2002). Plaintiff fails to present any evidence that the two mechanical engineers hired were not Muslim. This is but one of the many reasons Plaintiff fails to establish a prima facie case of religious discrimination.

## <u>CONCLUSION</u>

For the reasons stated above, the Court **GRANTS** Defendants' Motion for

Summary Judgment [Doc. 28].

      **SO ORDERED**, this 7th day of March, 2022.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**
